WILLIAM H. STAYTON, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. J. TOWNSEND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. S. TOWNSEND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 71867, 73186, 74541. Promulgated July 12, 1935.

*Virgil Y. Moore, Esq.,* for petitioner W. S. Townsend; *C. M. Charest, Esq.,* for petitioner A. J. Townsend; and *William H. Stayton, Jr.,* pro se.

*Elden McFarland, Esq.,* for the respondent.

OPINION.

LEECH: The respondent determined deficiencies in 1930 income taxes, of $1,391.19 as to Stayton, $6,041.53 as to A. J. Townsend, and $31,400.32 as to W. S. Townsend. These proceedings for redetermination of those deficiencies have been formally consolidated. The controversy is common to all and involves the single question of fact as to whether certain sums received by petitioners from the National Pipe Products Corporation are income for 1930 or 1931.

In 1929, W. S. Townsend transferred all territorial rights vested in him by virtue of a certain contract with the Fairyland Manufacturing Co., for the manufacture and sale of " Tom Thumb " golf courses, to National Pipe Products, for 25 percent of the net profits arising from that source.

By resolution of the directors of National Pipe Products of March 21, 1930, there was to be paid to A. J. Townsend, president of the company, for 1930, a bonus equal to 10 percent of the net profits for that year.

During 1930, Stayton was employed by National Pipe Products as its general manager, under a prior arrangement whereby he was paid a salary and a bonus equal to 5 percent of the annual net profits of the company.

The selling agreement between W. S. Townsend and National Pipe Products under which those parties acted, though the written agreement was never executed, did not fix the time or manner of the payment to Townsend of the amounts due thereunder. By resolution of the directors of the company of March 21, 1930, the treasurer of the corporation was authorized to loan to each of the three petitioners an amount not exceeding 80 percent of their then accrued bonuses, taking their promissory notes to the corporation, at 6 percent interest, as security. In October 1930, the several notes of each petitioner for withdrawals to the end of September were consolidated in a single note and the three consolidated notes and those subsequently given for additional withdrawals were entered on the company's books and treated as true bills receivable.

In February 1931, the books of National Pipe Products for 1930 were finally closed and the directors, by resolution, directed the treasurer " to pay, without recourse, bonuses and divisions of profits for the year 1930 " to these petitioners, among others, of certain specified amounts. The amounts directed to be paid to W. S. Townsend and Stayton were, in each instance, greater than their withdrawals in 1930, while the amount of A. J. Townsend's withdrawals in that year exceeded the amount so directed to be paid him. A. J. Townsend then gave his note to the corporation for the amount of this excess, a part of which note has been paid, and the unpaid balance is now carried as an asset by the corporation, payee, in receivership. The notes given by petitioners covering their withdrawals were then canceled and destroyed, and A. J. Townsend gave the company a new note for the amount of his excess withdrawals. In the cases of W. S. Townsend and Stayton it is the amounts which they actually withdrew during 1930 that are in controversy, while in the case of A. J. Townsend it is the amount directed to be paid by the resolution of February 1931, which is less than the amount of his withdrawals in 1930, that is in controversy. The corporation kept its accounts on the accrual system and accrued monthly these " bonus accounts " as well as Federal taxes. The petitioners, who filed their 1930 returns on a cash basis, treated the disputed amounts as income for 1931, and returned no part thereof in their 1930 returns.

The respondent held that these amounts were income for 1930. These proceedings resulted.

The Revenue Act of 1928, section 42, provides that all items of gross income are to be returned as gross income for the year in which received by the taxpayer, unless, under permitted methods of accounting, any such items are to be properly accounted for as of a different period. These petitioners computed net income in their returns on a cash basis, and, therefore, they were obliged to include all items of gross income in the gross income of the year in which received.

But the petitioners contend that the questioned amounts were received as loans and not as outright and unqualified payments of income, and that they received no income as such until the corporate resolution of February 1931 directed the payments of the amounts due them "as bonuses" and their promissory notes covering their 1930 withdrawals against anticipated "bonuses" were canceled and destroyed.

We agree with petitioners. The right of each petitioner to the bonus rested entirely on the corporate resolution of March 21, 1930. This resolution, though ambiguous, we have found, was intended to and did authorize the treasurer of the corporation to loan, during that year to each petitioner, not exceeding 80 percent of his agreed percentage of net profits of the company, then accrued.

The net profits, if any, upon which the bonuses were to be computed for 1930, the pending tax year, were not determinable until after the close of that year.

The monthly accrual of these bonuses on the corporate books were obviously merely estimates of that item, as were the similarly accrued Federal taxes. The accrual served here only as a means of measuring the amounts to be loaned to each petitioner, as authorized by the corporate resolution. The fact that Stayton, one of the petitioners, did not draw the amount to which he was entitled under that resolution, is significant of a loan.

The treatment of the disputed payments on the corporate books as loans in 1930, converted into absolute payments of income in 1931 upon the adoption of the corporate resolution in February of that year, authorizing the then payment of the bonuses without recourse, supports petitioners' position. Likewise do petitioners' income tax returns for both 1930 and 1931.

In the case of *Lorenzo C. Dilks*, 15 B. T. A. 1294, the petitioner, Dilks, was employed by the George A. Fuller Co. under a contract calling for a salary of $20,000 and a bonus of 10 percent of the "net profits earned" by the Wilmington office. In arriving at the net profits the value of the plant was to be ascertained by sale or otherwise and profit or loss on the same to be taken into account.

The company kept accurate costs of all work, monthly computations being made of the progress of the work. During the year 1920, the George A. Fuller Co. paid Dilks various sums in addition to his annual compensation of $20,000. These sums were carried by the company as an account receivable. Profits were finally determined on December 30, 1921, and the company credited petitioner's account with $87,500 ($82,000 had been advanced to him, $74,000 of this amount in 1920).

We held there that the payments to Dilks in 1920 constituted loans or advances.

The petitioners' position here is stronger than that there presented. Petitioners here gave their promissory notes to the payor corporation for their 1930 withdrawals, and such withdrawals were authorized in the corporate minutes as loans.

We conclude the disputed payments were received by petitioners as loans and not income in 1930. Such payments did not become income to petitioners until the cancellation of those loans in 1931 by authority of the corporate resolution then adopted. *Lorenzo C. Dilks, supra; Lorenzo C. Dilks*, 19 B. T. A. 646; cf. *United States v. Kirby Lumber Co.*, 284 U. S. 1.

Reviewed by the Board.

> *Decision will be entered for petitioners William H. Stayton, Jr., Docket 71867, and A. J. Townsend, Docket 73186; and decision will be entered pursuant to Rule 50 in respect to the proceeding, W. S. Townsend, Docket 74541.*