### BUDER et al. v. FISKE et al.
#### No. 14294.

United States Court of Appeals
Eighth Circuit.

Sept. 13, 1951.

Harry C. Blanton, Sikeston, Mo. (G. A. Buder, Jr., St. Louis, Mo., on the brief), for appellants.

Jesse T. Friday and Samuel H. Liberman, St. Louis, Mo. (E. J. Doerner, Tulsa, Okl., on the brief), for appellees.

Before WOODROUGH, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

In No. 13,595, Buder v. Fiske, 8 Cir., 174 F.2d 260, to prevent the possibility of a double payment being received, by the remainder interests under the will of Sophie Franz, of that portion of the recovery allowed against the trustees involved, for what constituted in effect unauthorized advancements made by them, we entered a modificatory order on petition for rehearing, 177 F.2d 907, 908, that "each of the nine remainder interests entitled to share in the Sophie Franz estate shall execute and deliver assignments of their interests (as hereinafter defined) in said estate to appellants".

We indicated in our per curiam opinion that, since the record before us contained no information as to the status and condition of the Sophie Franz estate, it was

not possible or necessary for us at that time, in the fixing of the "interests" which we intended the ordered assignments to cover, to go farther than to state in general terms what deductions or subtractions should be made from the amount which the trustees might be entitled to have returned to them as an augmentation of the remainder interests of the Sophie Franz estate from the unauthorized advancements —and we accordingly stated the deductions or subtractions in that manner only.

We prescribed a skeleton form of assignment for execution by each of the nine remainder interests, in order to permit and to enable such remainder interests to receive payment of that portion of the judgment allowed on account of the unauthorized advancements without any delay. Under the skeleton form, any remainder interest executing the assignment was, however, made to "agree to execute any further instruments which may be necessary to effectuate a recognition in the Probate Court, where the estate of Sophie Franz is being administered, of the assignment hereby intended and to compel a distribution to the said assignees of any amount which the remaindermen might otherwise receive out of the estate of Sophie Franz by virtue of such repayment of the so-called Advances having been made, including any net earnings which may have resulted from the possession of the funds by the Sophie Franz estate."

Thus, the effect of our modificatory order necessarily was to impose a condition, and a continued obligation of making that condition practicably effective, upon the right of the remainder interests of the Sophie Franz estate to receive payment or satisfaction of that portion of the judgment allowed for the advancements.

Subsequent to the issuance of our mandate and the entry of judgment thereon by the District Court, the trustees paid into that court the amount necessary to satisfy the entire judgment allowed against them, including the portion covering the unauthorized advancements, the receiving of which by the remainder interests had been conditioned. Five of the nine remainder interests promptly executed the skeleton form of assignment and received payment through order of the District Court of the conditioned judgment proceeds (as well as, of course, of the unconditioned portion of the judgment). The other four remainder interests have never taken any steps one way or the other with respect to the conditioned judgment proceeds. They neither have made acceptance of such proceeds by executing the assignment required, nor have they made rejection thereof by indication of their desire to take instead their full remainder share in the Sophie Franz estate as augmented by the unauthorized advancements, and so to abandon their right to the conditioned portion of the judgment.

The result has been that the money has now lain barrenly in court for more than a year and a half, with no opportunity to the trustees to move forward in protection of their own pecuniary interest, by being able to take steps in the Sophie Franz estate to establish any recoupment right in relation to the funds, or by being able to have their judgment liability satisfied of record through a rejection by the remaindermen, with an accompanying right in the trustees to have returned to them their unaccepted and unproductive judgment deposit.

In this situation the trustees made application to the District Court for an order fixing a reasonable time within which the non-complying remaindermen would be required to execute the ordered assignment, if they desired to do so, or by failing to do so would indicate their intention to reject the conditioned proceeds and to take instead their full remainder share in the Sophie Franz estate. The District Court denied the application on the ground that it had no jurisdiction.

We think the court either wrongly viewed the purpose of the application or took too narrow a view of its own powers in relation to our mandate. All that we had done was to impose a condition upon the right of the remaindermen to receive the proceeds involved and in this respect only had we limited the court's authority to effect distribution of them. We did not in any manner curb the court's jurisdic-

tion or power to take such appropriate incidental steps as might practicably and developingly be required to prevent a clogging by the parties of the channel of distribution.

■ Such an incidental power of achieving or effecting distribution of funds, a court of equity inherently has in relation to any trust being administered by it, within the bounds of the rights involved, in the absence of any special legal limitations in the particular situation. And in the present situation, we think that incidental power existed not merely on this implicit basis, but by express provision as well, under the language of the court's own decree —included within our affirmance—making reservation of whatever jurisdiction might be necessary "for the purpose * * * of enforcing and carrying out this order and decree * * * and *. * * of entering any and all orders necessary or appropriate to effectuate a final distribution of the assets in the custody and under the control of the court."

■ The deposited judgment funds were in the court's immediate possession. Two rights to them were involved and were entitled to consideration—(1) the conditional right of the remaindermen to receive them, and (2) the contingent right of the trustees to their return, if the condition was not performed by the remaindermen. Of course, the remaindermen could not be compelled to perform the condition and accept the funds, but the trustees' contingent right to their return, as well as judicial concern and responsibility for achieving distribution and enabling satisfaction of the court's judgment to be completed, entitled the court to have indication made of whether the remaindermen wanted to comply with the condition and take the funds or not comply and so reject the funds. This would not be contraventive or thwartive of our mandate but in accomplishment or execution of it on the basis of all the rights involved.

■ Our opinion made clear that the immediate manner of our conditioning of the remaindermen's rights was only done to facilitate an obtaining by the remaindermen themselves of prompt judgment satisfaction. It manifestly was not done to afford them an opportunity for temporizing or tying up a closing out of the trustees' liability and a satisfying of the court's judgment or for prejudicing in any way the trustees' rights. Since our opinion did not fix an express time for them to make their choice, what they naturally were entitled to and what necessarily was legally implied in the circumstances of the mutual rights involved was simply a reasonable time. And the year and a half that they have so far consumed has certainly more than given them all the opportunity for choice that they in good faith could reasonably need or expect.

The order of the trial court, dismissing, on the ground of lack of jurisdiction, the trustees' application for an order fixing a reasonable time (now properly measurable in relation to the fact that a year and a half has already gone by), within which the non-complying remaindermen would be permitted to execute the ordered assignment, if they intended to do so, and providing that their failure so to do should effect an election on the part of any such non-complying remainderman not to accept the conditioned judgment proceeds but to retain instead his full undiminished interest and share in the Sophie Franz estate, and would entitle the trustees to a return of any such unaccepted deposited proceeds and to an order of satisfaction and discharge of the portion of the judgment covered thereby, is reversed, with directions to grant the trustees' application.

Application further was made to the District Court by the trustees for an order determining and fixing specifically the nature and amount of the interest or property in the Sophie Franz estate to which they would be entitled under the assignments executed by the accepting remaindermen. The court similarly denied this application on the ground of lack of jurisdiction.

Such a determination and fixing would seem off-hand to involve primarily a matter of identification, tracing and computation

by an auditor or accountant. We assumed that this was something upon which the parties reasonably would be able to agree or unable to engage in sound dispute—an assumption perhaps unwarranted, from the bitterness which has characterized the many controversies in the long history of this trust estate. We did, however, take the precaution of safeguarding against the contingency of dispute, by obligating the remaindermen to execute any further instruments necessary to effectuate a recognition in the Probate Court of the assignment intended and capable of producing a distribution under it.

█ If the skeleton form assignment made it possible for the parties to engage in further legal controversy, which they could carry in to the Probate Court, then the assignment executed necessarily had not succeeded in effectuating between the parties a recognition in the Probate Court of the interest intended nor in making administratively possible therein a distribution on the basis of it. In that situation, jurisdiction clearly remained in the federal court to compel the remaindermen, under the obligation of their agreement, to execute such a further assignment as would achieve the intended result, including such a specification in the subsequent instrument of the nature and amount of property to which the trustees were entitled as might be necessary to eliminate controversy between the parties by being legally conclusive upon them.

It should not require saying, we think, that it was not the purpose of the decree to have the assignments subject the Probate Court to any burden of litigation between the parties. As the language of the obligation exacted from the accepting remaindermen plainly indicates, the situation was left where the federal court could and would, whenever properly called upon, require the execution by the remaindermen of any "further instruments" that might be necessary to effectuate automatic recognition in the Probate Court of the interest in the Sophie Franz estate intended by our opinion and to make distribution adminis-

tratively possible on that basis. This would simply be making non-adversarily effective that which we had legally granted, through the hold which had been retained upon the remaindermen for that purpose, and so of bringing about, within a court of equity's natural and traditional object, a termination of the controversy before the court, of which in the present situation the effectuation of the intended interest in the Sophie Franz estate through the execution of any necessary further instruments had been made by us a concluding incident.

█ The District Court therefore was not without jurisdiction to express specifically the nature and amount of the interest or property in the Sophie Franz estate to which the trustees were entitled, as an incident of its power to compel the execution of any further instruments of assignment which might be necessary to effectuate a recognition of the trustees' interest in the Probate Court and to enable a distribution to be administratively made on the basis thereof.

But, in view of the immediate remedy or recourse left available—the allowing of any necessary further instruments to be applied for—the court would not be obliged to make a determination or definition of the trustees' interest in any general or declaratory manner, not a part of a requested, necessary further instrument, such as was the effect of the trustees' present application. And we do not think that legally it would be possible for the trustees to claim that the assignments executed had not effectuated a recognition in the Probate Court of their created interest, so long as those assignments themselves had never in fact been filed in that court. Further, in order properly to evidence such a lack of recognition by the remaindermen in the Probate Court, it would also seem the trustees naturally should expect to file with their assignment in that court a specification of what they alleged it covered in property and amount and to await the making by the remaindermen of actual objection or protest in that court to the correctness of this specification. The allegation which the trustees now make in

their application, that the remaindermen have been asked to indicate to them extraneously the nature and amount of the interest which the remaindermen regard the executed assignments as covering but have failed to do so, can therefore not be said to have entitled them to any relief. It was accordingly proper for the court to deny their application, but not however on the ground that it lacked jurisdiction to entertain such an application.

In accordance with what has been said above, the action of the District Court is in part reversed and in part affirmed.