G. A. BUDER, Jr., Executor of the Estate of G. A. Buder, deceased, Respondent,

v.

Edward A. WALSH, Administrator c.t.a. d.b.n. of the ancillary estate of Gustav A. Franz, deceased, Appellant,

Gustavus A. Buder, Jr., Third-Party Defendant, Respondent.

No. 45906.

Supreme Court of Missouri,

Division No. 1.

June 9, 1958.

Motion for Modification of Opinion Denied July 14, 1958.

William W. Crowdus, David G. Lupo, St. Louis, for appellant.

G. A. Buder, Jr., Richard O. Roberts, St. Louis, for respondent.

James J. Milligan, St. Louis, for Oscar E. Buder, Executor d. b. n. Estate of Sophie Franz, Acreage Realty Co., and Oscar E. Buder, an individual, amici curiæ.

COIL, Commissioner.

This is an appeal from a judgment in an equity suit wherein one cotrustee sought equitable contribution from the other to allegedly equalize their payments in satisfaction of a joint and several surcharge judgment rendered against them, and wherein defendant cotrustee cross-claimed for full indemnity from plaintiff cotrustee for money defendant had paid in partial satisfaction of such surcharge judgment. The cotrustees involved were G. A. Buder and G. A. Franz. The instant suit was instituted by G. A. Buder against Orval C. Sutter, administrator c. t. a. d. b. n. of the Missouri ancillary estate of G. A. Franz, who died in July 1939. During its pendency G. A. Buder died and his executor, G. A. Buder, Jr., was substituted as plaintiff, and later Edward A. Walsh was substituted as defendant as successor administrator of the G. A. Franz estate.

E. D. Franz died testate in 1898. He left the residue of his estate to his widow, Sophie, for life with remainder in equal parts to their ten children. In 1909 Sophie executed a trust agreement whereby she conveyed to G. A. Buder and G. A. Franz (her son), as trustees, all of her property, including the property which she owned outright and her interest in the property which she held as life tenant under her husband's will. From the inception of the trust there was almost constant strife and differences among the trustees and some of the remainder interests. As early as 1910 there was litigation in the St. Louis Circuit Court styled E. W. Franz v. G. A. Buder, No. 57836–A, for construction of the trust agreement. Litigation in the federal courts began early and continued at least until late 1951. There were two cases in the Supreme Court of Missouri. While reference will hereinafter be made to certain of those cases, a fuller history of the litigation than here set forth will be found in the cases cited in the footnote.[1]

1. Franz v. Buder, 8 Cir., 11 F.2d 854; Franz v. Franz, 8 Cir., 15 F.2d 797; Buder v. Franz, 8 Cir., 27 F.2d 101; Franz v. Buder, 8 Cir., 34 F.2d 353 and 8 Cir., 38 F.2d 605; Mississippi Valley Trust Co. v. Buder, 8 Cir., 47 F.2d 507; Franz v. Mississippi Valley Trust Co., 8 Cir., 51 F.2d 1047; Fiske v. State of Missouri, 8 Cir., 62 F.2d 150; Wallace v. Franz, 8 Cir., 66 F.2d 457 and 68 F.2d 313; Fiske v. State of Missouri, 8 Cir., 69 F.2d 683; Wallace v. Fiske, 8 Cir., 80 F.2d 897; Fiske v. Wallace, 8 Cir., 117 F.2d 149; Fiske v. Buder, 8 Cir., 125 F.2d 841; Buder v. Fiske, 8 Cir., 174 F.2d 260 and 177 F.2d 907; Simmons v. Friday, 8 Cir., 190 F.2d 849; Buder v. Fiske, 8 Cir., 191 F.2d

In so far as necessary to our disposition of the instant issues, suffice to say that Sophie Franz, the life tenant, died in 1930, but that matters concerning the administration of the trust which terminated upon her death and matters affecting the remainder interests under the will of E. D. Franz were unsettled for years thereafter. Thus, in 1942 the federal district court directed the surviving trustee, G. A. Buder (as noted, G. A. Franz, the cotrustee, died in 1939), to employ a designated accounting firm which prepared and filed an audit and final accounting in the E. D. Franz estate from June 1931 to the date of filing the report. Certain remaindermen (who, by then, were nine, one child of E. D. and Sophie Franz having died unmarried and without issue) filed exceptions to the report. The district court sustained four such exceptions and entered a judgment which, inter alia, surcharged the cotrustees (the judgment was entered against G. A. Buder and Arthur U. Simmons, administrator c. t. a. of the G. A. Franz estate) with the four items which then totaled (including interest) $366,511.24. Those items were:

(1) Attorneys' fees theretofore allowed Buder & Buder as attorneys for the trustees and certain remaindermen, $115,000.

(2) Interest on trust funds which had been commingled with the funds of Buder & Buder, $7,305.76.

(3) The value of 600 rights to acquire shares of stock of the Burroughs Adding Machine Company which rights had been retained by the trustees in January 1920 as commissions, $45,000.

(4) "Advancements" to remaindermen: principal, $100,795.46; interest thereon from April 15, 1930, $98,410.02; total, $199,205.48.

The surviving trustee, G. A. Buder, and Simmons, as administrator of the G. A. Franz estate, appealed from that judgment

in so far as it had surcharged the trustees in the four respects above noted. The opinion of the United States Court of Appeals is reported in the case of Buder v. Fiske, 8 Cir., 174 F.2d 260. The district court's judgment as to the surcharged items (the only matters of appeal) was affirmed.

The above items labeled "attorneys' fees" and interest on commingled funds are self-explanatory. The $45,000 item described as rights to purchase certain shares of Burroughs stock arose when the trustees retained five per cent of a total number of rights which had accrued in 1920. The trustees took the position that the "rights" were income on which they were entitled to commissions. The court decided that the rights were corpus and that the trustees had no right to retain five per cent of them.

The item labeled "advancements" requires a fuller explanation. Subsequent to the death of E. D. Franz and prior to the execution of the trust agreement, Sophie caused payments to be made to her ten children totaling $87,500 and, within two months after the execution of the trust agreement, further payments to those children (remaindermen under their father's will) of $50,000, making a total amount paid to them of $137,500. As the 1924 litigation (Buder v. Franz, 27 F.2d 101) disclosed, G. A. Buder and perhaps his cotrustee, G. A. Franz, had entered on a course of conduct designed to satisfy or destroy the remainder estates by causing the remaindermen to execute various and sundry agreements and receipts indicating that the mentioned payments, as well as others received from or through Sophie Franz, were advancements against the respective remainder shares due them from their father's estate. That course of action involved the concept or belief that stock dividends were income and not corpus and therefore went to the life tenant. (That was important in the E. D. Franz estate inasmuch as 210 shares of stock

321; State of Missouri v. Fiske, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145; In re Franz' Estate, 344 Mo. 510, 127 S.W.2d 401; In re Buder, 358 Mo. 796, 217 S.W. 2d 563.

of the American Arithmometer Company, owned by E. D. Franz at the time of his death, became, through stock dividends, 282,500 shares of stock in the Burroughs Adding Machine Company worth, in 1929, $25,000,000.) The 1924 litigation determined that stock dividends were corpus and that the various receipts, agreements, etc., relied upon by the trustees as having destroyed the remainders of the Franz children had not had that effect and that the children had vested remainders under the will of E. D. Franz.

The cotrustees, in January 1927, credited themselves as trustees with $100,795.46. That sum was part of the proceeds received from the sale of certain Burroughs preferred stock. The theory of the trustees in entering the credit was, as we understand, that that amount had been, in effect, loaned by Sophie Franz to the estate of her husband and on behalf of that estate she had caused the aforementioned payments to the remaindermen to be made as advances against their remainder interests and that the E. D. Franz estate was obligated to repay Sophie Franz the $100,000. The district court found, and the appellate court affirmed (Buder v. Fiske, supra), that $100,795.46 of the total $137,500 had come from the separate funds of Sophie Franz, that she intended to and did give the various amounts to her children as outright gifts without expectation or intent of reimbursement, that there was no implied obligation on the E. D. Franz estate to repay that sum to Sophie, and that, consequently, the trustees had wrongfully taken that credit.

Sophie died April 14, 1930, and her estate was administered in the St. Louis City Probate Court. Thus, the $100,000 item credited to the trustees went into the Sophie Franz estate rather than directly to the E. D. Franz remaindermen. It happened, however, that Sophie's will left her estate in equal shares to her nine children or their descendants. Thus, Sophie's legatees were the same persons as the remaindermen under the E. D. Franz will. Consequently, the effect of the judgment

as to the "advancement" item was to provide for double payment to the same persons, as remaindermen under their father's will and as legatees under their mother's will. That situation was called to the attention of the United States Court of Appeals on rehearing. In a separate opinion in Buder v. Fiske, supra, reported in 177 F.2d 907, the court held that such double payments should be avoided and modified its former opinion by providing that before each remainder interest under the will of E. D. Franz could receive its proportionate share of the judgment involving the "advancement" item, the persons entitled to each such remainder interest would need to execute and file an assignment to G. A. Buder as surviving trustee and the administrator of the G. A. Franz estate, by the terms of which the assignors' "interest" in the Sophie Franz estate was assigned to such assignees. "Interest" was defined in such a way as to provide that the assignment covered the net proportionate amount of the $100,000 item which each remainder interest would have received as Sophie's legatee. That opinion was rendered on December 5, 1949.

On January 5, 1950, the surviving trustee, G. A. Buder, from his own funds, paid into the registry of the federal court the sum of $247,470.40 which he described in pleadings thereafter filed as cash sufficient to discharge *all items* (principal and interest) *of the judgment and decree* (including the surcharge items) *with the exception of the "advancement" item.* On February 20, 1950, attorneys for G. A. Buder as surviving trustee and for the administrator of the G. A. Franz estate pointed out to the court that the *total "advancement" item contained in the judgment, including interest,* was $199,205.48; that interest thereon from the judgment date to February 20, 1950, was *$42,795.92, making a total of $242,001.40;* that on January 20, 1950, G. A. Buder deposited $24,097.22, which was the amount necessary to take care of the proportionate share of the "advancement" item due the Walter G. Franz estate which, for some reason, needed to execute no assignment,

and that the G. A. Franz estate was to be paid, if at all, direct; that, consequently, the total amount sufficient to pay in full the "advancement" item judgment was, on February 20, 1950, $193,601.12. The amounts totaling the $193,601.12 (the sum sufficient to satisfy the advancement item) were from these sources:

| | | |
|---|---|---|
| Fund on hand in court and available to trustees as reimbursement to them for expenses of administration | | $7,026.65 |
| From G. A. Franz estate | $16,298.57 | |
| | 97,875.00 | 114,173.57 |
| From G. A. Buder | | 72,400.90 |
| | | $193,601.12 |

There was further litigation over the validity of the assignments executed by certain of the remainder interests (see Buder v. Fiske, 8 Cir., 191 F.2d 321). But, in so far as we are presently concerned, it appears that there were 1½ remainder interests (including the remainder interest of G. A. Franz, cotrustee) which failed to file the necessary assignments and, consequently, there remained in the registry of the United States District Court the sums of $34,012.12 and $69.60 (refund of expenses by one of the remainder interests), making an unused total of $34,081.72. That sum remained in the court's registry until October 26, 1953, when, as we understand, on request, the clerk issued a check payable jointly to G. A. Buder and the administrator of the estate of G. A. Franz. It also appears that matters relating to the amount of money which was to be received by virtue of each of the assignments executed by the remainder interests were compromised and it was agreed with G. A. Buder as executor of Sophie Franz that the assignees, G. A. Buder and the administrator of the estate of G. A. Franz, should receive, by virtue of the executed assignments, $97,500.02. Thus, on December 26, 1953, the St. Louis Probate Court, in an order of distribution, directed G. A. Buder, as the executor of the estate of Sophie Franz, to pay to himself and the G. A. Franz estate the sum of $97,500.02.

That check was issued and at trial time was held unendorsed by instant plaintiff.

The trial court found in the instant case that, as between themselves, cotrustees Buder and Franz were equally responsible for and liable for the breaches of trust resulting in the judgment for the surcharge items except for the items of $115,000 attorneys' fees and $7,305.76 interest on commingled funds. The trial court further found that by reason of the performance of a certain agreement of December 28, 1951 (hereinafter described), the estate of G. A. Franz had been fully indemnified and made whole as to the $115,000 and $7,305.76 items and was entitled to no further credit or adjustment on account thereof. The trial court then stated an account between the parties and took into consideration the various checks, funds, and other property in the hands of various parties, etc., in an attempt to make equal the cotrustees' liability for and their contributions toward the satisfaction of the district court's judgment. The resulting decree provided that the $34,012.12 check was to be plaintiff's and for a monetary judgment against defendant in the sum of $97,856.61. The trial court, of course, found against defendant as cross claimant.

Defendant-appellant's contention has been, both as a defense to respondent's claim for contribution and as a basis for

his recovery from plaintiff of any amounts theretofore paid by the estate of G. A. Franz toward satisfaction of the surcharge judgment, that, as between the cotrustees, G. A. Buder alone was guilty of the "derelictions and acts" which brought about the breaches of trust which, in turn, resulted in the surcharge judgment; that the acts of G. A. Franz as G. A. Buder's cotrustee were dependent entirely upon the decisions and activities of G. A. Buder, a lawyer, and, as G. A. Buder was not only a cotrustee but was the attorney for himself and G. A. Franz, as cotrustees, Buder was not entitled to contribution from the G. A. Franz estate but, on the contrary, the G. A. Franz estate was entitled to indemnity from the estate of G. A. Buder. And, of course, implicit in appellant's position has been the contention that the breaches of trust resulting in the items of surcharge were for the most part breaches committed by G. A. Buder in bad faith, wrongfully, and fraudulently, thus barring any right of contribution from his cotrustee, irrespective of the culpability of such cotrustee.

Respondent's position is that cotrustee Buder and the estate of cotrustee Franz, by their agreement of December 28, 1951 (hereinafter discussed), settled any question of relative culpability between them as cotrustees by expressly mentioning the individual liability of G. A. Buder for two of the surcharge items and failing to mention the others, thereby clearly agreeing that the cotrustees were equally liable for all other judgment items; further, that, irrespective of the validity of the foregoing, the evidence showed that cotrustee G. A. Franz was during his lifetime an active participant in all of the breaches of trust for which they were surcharged; that all such breaches were the result of mistakes of judgment on the part of the trustees, were not in bad faith, fraudulent, or wrongful, and that each of the trustees was therefore equally liable for loss resulting from those breaches.

By leave, Oscar E. Buder, as executor d. b. n. of the estate of Sophie Franz and as an individual, and the Acreage Realty Company have filed here a brief and argument as amici curiae.

This case was reargued and supplemental briefs filed after a motion for rehearing had been sustained following a prior tentative opinion. Appellant's present position, to which we shall refer in detail hereinafter, makes it unnecessary for us to decide the degree of liability of the cotrustees as to each other or the question of respondent's liability on appellant's cross claim. We shall, because of appellant's present position, assume that the cotrustees' liability for the only disputed surcharge item was and is equal.

As heretofore noted, there were four items making up the surcharge judgment. The parties are in agreement that appellant was not liable for either of the first two items, viz., attorneys' fees and interest on commingled funds. It also is admitted that the parties were equally liable for surcharge item number 3, viz., the $45,000 "Burroughs stock rights" item. We have assumed that the parties were equally liable for surcharge item number 4, the $199,205.48 "advancement" item. Now, as we have also heretofore set forth, *G. A. Buder paid into court the sum of $247,-470.40 in satisfaction of the principal and interest of surcharge items 1, 2, and 3.* Admittedly, *the G. A. Franz estate was not liable for items 1 and 2 and was liable for only one half of item 3,* or $22,500 plus interest thereon from the date of the surcharge judgment until the date of payment thereof, or a total of approximately $26,168.75.

We have also heretofore set out that on February 20, 1950, there was paid in satisfaction of the *remaining* ("advancement") *item* (No. 4) *of the surcharge judgment,* the sum of $193,601.12 (after G. A. Buder had paid $24,097.22 to satisfy the W. A. Franz estate proportionate share and the G. A. Franz estate had in effect furnished a like amount by waiving and not then receiving its proportionate share). Thus, the G. A. Buder and the G. A. Franz estates were each liable for one half of

$193,601.12 or $96,800.56. As noted, the Franz estate paid on that judgment item $114,173.57, while G. A. Buder paid $72,400.90, and there was a $7,026.65 joint payment from money on deposit as a joint reimbursement to the cotrustees for expenses of administration. Thus, in so far as concerns the liability of cotrustee Franz and his estate to his cotrustee G. A. Buder and his estate, the account appears to be:

| | |
|---|---:|
| Franz owed: | |
| One half of $186,574.47 ($193,601.12 minus $7,026.65) | $93,287.24 |
| One half of $45,000 plus interest (as noted) | 26,168.75 |
| Total for which Franz estate was liable on account of surcharge judgment | $119,455.99 |
| Paid on such total by Franz estate | 114,173.57 |
| Balance of principal due | $ 5,282.42 |
| Interest thereon from February 20, 1950, to date (approximately) | 2,691.99 |
| Total due | $ 7,974.41 |

We have said that the foregoing would appear to constitute the proper accounting between the parties. We should be confident thereof were it not for the matter next discussed. On December 28, 1951, a written agreement was entered into between G. A. Buder, O. E. Buder (a lawyer who, with G. A. Buder, comprised the firm of Buder & Buder), and Simmons, as administrator of the G. A. Franz estate. The firm of Buder & Buder had allowed claims against the estate of G. A. Franz in the total sum of $279,324.88. One part of the mentioned agreement settled those claims by the Buders accepting from Simmons 12,185 shares of common stock of Burroughs and cash in the sum of $14,046.60. The agreement further provided that Simmons was to hold the stock and the $14,000 as trustee for O. E. and G. A. Buder until such time as a court of competent jurisdiction had determined the respective interests of G. A. and O. E. Buder in such stock and cash. The agreement then provided:

"It is understood and agreed by and between all the parties hereto that Ar-thur U. Simmons, Administrator c. t. a. of the Estate of G. A. Franz, deceased, was by a decree of the U. S. District Court entered on the 23rd day of July, 1946, in the case of Franz v. Buder, D. C., 82 F.Supp. 388, held liable for one-half of all items enumerated in such judgment, but that neither the said Simmons as such Administrator nor G. A. Franz during his lifetime had received nor in any manner profited by any part of item (d) of such judgment, the same being attorney fees in the sum of $115,000, or item (g) of such judgment, the same being interest on commingled funds in the sum of $7,305.76; and that, *therefore, Arthur U. Simmons is entitled to recovery of or reimbursement for one-half of such items* plus one-half of the interest thereon from July 23, 1946, to January 5, 1950 (the date of payment into the registry of the Court), or a total sum of $73,831.91; *and that Arthur U. Simmons is hereby authorized and directed to pay himself as Administrator c. t. a. of the Estate of G. A. Franz, deceased, the sum of $73,831.91*

out of the proceeds held by him, and to deduct the same and take credit therefor in any distribution made to G. A. Buder and O. E. Buder, or either of them." (Our italics.)

After Simmons' death, Sutter as the successor administrator of the G. A. Franz estate, brought a suit in the St. Louis County Circuit Court, one of the purposes of which was to set aside and cancel the December 28, 1951, agreement, for the reason, as we understand, that the probate court which had approved that instrument had no jurisdiction to do so. In a document entitled "Finding, Judgment, Decree and Order" dated April 18, 1956, and which is set forth as an appendix to respondent's brief, the court found that the December 28, 1951, agreement was valid and binding and that, pursuant to its terms, Simmons and his successor, Sutter, the plaintiff in that suit, had collected $63,395.85 of the total of $73,831.91 provided for and that there was then due a balance of $13,755.99 which, we understand, was thereafter paid. Attached to that "Finding, Judgment, Decree and Order" is an addendum dated April 17, 1956, which provided: "The parties to this suit, by their respective attorneys, hereby approve of and consent to the foregoing Finding, Judgment, Decree and Order and hereby covenant and agree that none of them will appeal therefrom." That was signed by (among others) present plaintiff and the present attorney for instant defendant.

The December 28, 1951, agreement was introduced as an exhibit in the instant trial by the appellant for the avowed purpose of showing that plaintiff-respondent had theretofore recognized that, as to certain items at least, there was a degree of liability between the cotrustees other than equal. Plaintiff-respondent seized upon appellant's exhibit as constituting "a voluntary out-of-court adjustment of financial liability on the basis of the relative responsibility of the two cotrustees, which precludes reopening that question." Respondent points to certain language of the agreement and concludes that the reason

that the recovery by Simmons as administrator "was limited to the two specific items above mentioned is plain—[because] as to the other items there was equal responsibility." And respondent further says that the agreement is subject to the application of the well-established maxim that the express mention of one thing implies the exclusion of another.

We note, however, certain language of respondent in a portion of his argument in support of the proposition that that agreement finally settled only the matter of equal liability as to all but the two items mentioned, which language appears to give a broader and more decisive effect to the agreement than respondent's stated limited conclusion:

"If there had been the slightest intention to reserve the 'advancement' surcharge for future adjustment, it is self-evident that there would have been an appropriate reservation included in the agreement. *What conceivable reason could have existed for a piecemeal adjustment? What possible objective could there have been in adjusting part of the surcharges and permitting the balance to remain undisposed of and open for future determination?* If appellant here thought the G. A. Franz Estate was entitled to additional indemnity, why didn't he assert the claim at that time instead of consenting to the award on two items only of the surcharge?" (Our italics.)

It appears to us that plaintiff-respondent and defendant-appellant, perhaps each to avoid the effect of the agreement and thus to avoid being barred from recovering on his claim and cross claim respectively, have failed to give to that agreement its full effect, and, in any event, the parties have wholly failed to explain its meaning and effect upon any accounting between the trustees.

In considering the effect the agreement should have in the instant litigation, we call attention to the fact that at the very time G. A. Buder paid or provided for the pay-

ment to his cotrustee of more than $73,000 which he said his cotrustee was entitled to the "recovery of or reimbursement for," G. A. Buder contended (as disclosed by his brief and the decree in the instant suit) that his cotrustee was then indebted to him in a principal sum of at least $50,000 plus a large amount of interest. It is also significant that it is admitted by respondent that neither G. A. Franz nor his estate ever owed one half the attorneys' fees and commingled interest items of the surcharge judgment and, so far as the evidence before us goes, there has been no showing that the Franz estate ever paid one half of those items; yet G. A. Buder solemnly agreed to and did *pay back* to the Franz estate one half of those items.

Furthermore, in so far as the instant record shows, from January 1950 until Simmons died in March 1953, no attempt was made by G. A. Buder as cotrustee to recover any sum from or obtain an agreement as to liability for any sum from or by the G. A. Franz estate, the December 28, 1951, agreement being the only evidence of any adjustment between the cotrustees. Also, the December 28, 1951, agreement was executed at least two years after G. A. Buder had knowledge of all the facts upon which liability of the Franz estate for equal contribution could have been based, and while the exact amount that would be returned by the clerk of the federal court to the cotrustees or the exact amounts that should be forthcoming from Buder as executor of the Sophie Franz estate to himself and Franz as trustees were not known, it was known that substantial sums would be due and would be forthcoming. Despite that knowledge, G. A. Buder did not, in January 1950 or prior thereto, or thereafter until after the death of Mr. Simmons in 1953, attempt to make or suggest any arrangement whereby G. A. Buder would receive the share of the G. A. Franz estate in either the deposit in the federal court registry or the amount due from the Sophie Franz estate on account of the assignments to the cotrustees.

On the contrary, under the circumstances related, G. A. Buder entered into an agreement with the administrator of the estate of his cotrustee, G. A. Franz, in which he recited that the G. A. Franz estate had been "held liable for one-half of all items enumerated" in the judgment entered in the district court on July 23, 1946; that because Franz had not profited during his lifetime, nor had his estate thereafter, from the attorneys' fees which had been received by Buder & Buder or by the interest on the funds which had been commingled with the funds of Buder & Buder, Simmons (representing Buder's cotrustee) "is entitled to recovery of or reimbursement for one-half of such items plus one-half of the interest thereon from July 23, 1946, to January 5, 1950 (the date of payment into the registry of the Court), or a total sum of $73,831.91; * * *." And the money, the $73,000, which the Franz estate was to receive as a recovery or reimbursement was not in the nature of a credit on some prospective full accounting between the parties but, on the contrary, was, in effect, a cash payment.

It would seem that the most logical conclusion from the language of the agreement is that the G. A. Franz estate had theretofore in some manner or other overpaid (in so far as G. A. Buder, cotrustee, was concerned) whatever obligation it had as to one half of the liability imposed by the surcharge judgment, and was entitled to be reimbursed in an amount in excess of $73,000.

We are cognizant of the fact, however, and we have fully considered it, that there is no evidence in this record which discloses why or how the conclusion was reached that on December 28, 1951, G. A. Buder owed the estate of Franz one half of a sum of money which the evidence does not show was ever paid by Franz and for which Franz never had been liable. We have noted also, however, that there is nothing in this record which in any manner explains the effect of the December 1951 agreement. And we think each of the

parties had that burden if either was to recover on his claim or cross claim, respectively. It is true, as respondent contends in his supplemental brief, that there was no specific issue in the trial of this case involving any contention that the December 1951 agreement was decisive and barred recovery herein by either party. The fact remains, however, that this suit, so far as plaintiff was concerned, involved an accounting between cotrustees and it was therefore encumbent upon respondent to adduce the evidence necessary to establish the various items claimed and, as an integral part thereof, to explain why the money was paid to the Franz estate by the terms of the December 1951 agreement under the circumstances heretofore related. Liability could scarcely be based upon so unsatisfactory a record and respondent is in no position to insist that this equity court either overlook or, in effect, base a judgment upon evidence confused as it is by the December 1951 agreement.

Under all the circumstances, we are unable on this record to reach a definite conclusion as to the meaning and effect of the December 1951 agreement, even though we are aware that it may be that the G. A. Franz estate has received by virtue of the December 1951 agreement $73,000 through some mistake of law or fact and ought to repay it as well as the $7,974.41 heretofore mentioned.

As indicated heretofore, appellant has taken a present position which we construe as an abandonment of its cross claim and, in recognition of the unsatisfactory record and a desire to avoid any possibility of unjust enrichment, as a waiver of the necessary proof to properly establish respondent's right to some recovery herein. After full consideration, we are of the opinion that we should give effect to appellant's present position which is expressed in its final brief in this language:

"To eliminate any possible question of unjust enrichment, as advanced by respondent, and since this is a proceeding in equity, and in order to bring these many decades of litigation to a close, appellant respectfully submits that the Court's original opinion herein should stand as filed, excepting that said opinion be modified (commencing in the fourth line of the last paragraph thereof) to provide 'for the division and distribution of the money, checks and other property in the hands of and control of the various parties' in the manner following:

"(a) Appellant to receive the entire distributive share of the Sophie Franz estate described in the trial court's decree.

"(b) Appellant to be paid out of the certificates of deposit and funds in the custody of the Clerk of the Circuit Court of St. Louis County in this cause, the sum of $17,841.66 plus interest thereon at 6% per annum from February 20, 1950.

"(c) Respondent to be paid out of the aforesaid certificates and funds in the custody of the aforesaid Clerk any sums remaining after the payment of item (b), supra, to appellant.

"(d) Respondent to receive all the other assets described in the trial court's decree other than those set forth in items (a) and (b), supra."

Accordingly, the judgment is reversed and the case is remanded with directions: to enter a judgment in favor of plaintiff and against defendant in accordance with appellant's suggestions above set forth (all items or assets referred to are to be included without interest unless specifically othwise provided in the above suggestions) and providing for the necessary division and distribution of the money, checks, and other property in the hands of the various parties in order to give effect to such suggestions; to enter judgment for plaintiff and against defendant on defendant's cross claim; to enter judgment dismissing defendant's claim against third-party defendant; and to assess the costs equally between appellant and respondent.

The costs on this appeal are assessed equally between appellant and respondent.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.