**SECURITY–MUTUAL BANK & TRUST CO., Plaintiff-Respondent,**

v.

**G. A. BUDER, Jr., Executor of the Estate of G. A. Buder, Deceased, Defendant-Appellant,**

Oscar E. Buder, Executor d.b.n. of the Estate of Sophie Franz, Deceased, Defendant-Respondent.

No. 48075.

Supreme Court of Missouri,

Division No. 2.

Dec. 12, 1960.

Motion for Modification of Opinion Denied Jan. 9, 1961.

Motion for Rehearing or for Transfer to Court en Banc Denied Jan. 9, 1961.

Cobbs, Armstrong, Teasdale & Roos, by Bourne Bean, St. Louis, for plaintiff-respondent.

James J. Milligan, St. Louis, for defendant-respondent.

G. A. Buder, Jr., St. Louis, pro se.

BARRETT, Commissioner.

Instead of immediately indicating how and why this case came to be in this court and before plainly stating the questions involved, it appears to be more appropriate to an understanding of the appeal to first briefly set forth the facts and circumstances in which the case and its issues arose. Incident to the Buder litigation and under an order of the probate court, the Security-Mutual Bank & Trust Company in July 1943 became the "custodian" or "depository" of the "assets" of the "Estate of

Sophie Franz." G. A. Buder, Sr., was then the executor of Sophie's estate and the deposited assets were then of the value of $1,614,067.80. By May 1959 G. A. Buder, Sr., was dead and G. A. Buder, Jr., had become the executor of his estate and Oscar E. Buder had succeeded G. A. Buder, Sr., as the executor of Sophie's estate. In the meanwhile, between 1943 and 1959, the internecine Buder litigation continued as it has since 1923. Four of the more recent cases involving Sophie's estate, directly or indirectly, are Buder v. Fiske, 8 Cir., 174 F.2d 260; Buder v. Fiske, 8 Cir., 177 F.2d 907; Buder v. Fiske, 8 Cir., 191 F.2d 321, and Buder v. Walsh, Mo., 314 S.W.2d 739. By December 1953 there had been an order of distribution in Sophie's estate and G. A. Buder, Sr., had prepared and "tendered" a final settlement and there had been an order on the depository bank to "release said assets." Pursuant to the order the trust department of the bank, on December 30, 1953, issued its check in the sum of $97,500.02 payable to "G. A. Buder (Sr.) and Estate of G. A. Franz." According to the record in this case (and see Buder v. Walsh, 314 S.W.2d, loc. cit. 743) that check was not presented for payment until almost five years later, in August or September 1958. At that time payment was refused when the check was presented by G. A. Buder, Jr., executor of his father's estate.

Again in the meanwhile, prior to the institution and trial of this particular proceeding, G. A. Buder, Sr., died in April 1954 and Oscar became the successor executor of Sophie's estate. Upon becoming executor of Sophie's estate Oscar wrote a letter asking the bank to inform him of "the status of the business transactions had with you by G. A. Buder (Sr.) as the Executor of the Estate of Sophie Franz." At the same time G. A. Buder, Jr., as the executor of his father's estate, wrote the bank, "as custodian in the Estate of Sophie Franz," and stated that "All cash * * * belongs to the Estate of G. A. Buder (Sr.) and represents commissions earned by him

during his lifetime as executor of the Sophie Franz Estate." In that letter G. A. Buder, Jr., informed the bank that the successor executor of Sophie's estate was "not entitled to any of the property in your custody." In May 1956, "so that there may be no question as to my position," Oscar again informed the bank that the order under which it "enjoyed" joint possession of Sophie's assets had "no application to me." Furthermore, he said, "I now demand possession of all personal property of said Estate * * * and cash in the sum of $97,500.02, on which a check has been issued to the order of G. A. Buder (Sr.) and the Estate of G. A. Franz, and payment likewise stopped by you at my request."

The principal item involved upon this appeal, either cash or a check in the sum of $97,500.02, is described and given some consideration in Buder v. Walsh, 314 S.W. 2d, loc. cit. 743, 748, although Sophie's estate was not in point of fact a party to that suit. However, the record in that case, as in all the Buder cases, was most confusing, the meritorious issues were indeed elusive and consequently the opinion may be inconclusive. It is not necessary to a disposition of this appeal to detail all the relevant facts and circumstances. But one further fact should be noted before stating what this appeal involves; in May 1959 G. A. Buder, Jr., as the executor of G. A. Buder, Sr., instituted a suit for damages against the Security-Mutual Bank & Trust Company in which he prays for actual damages in the sum of $97,500.02 and punitive damages in the sum of $100,000 and that action is pending.

In this briefly noted background, on May 20, 1959, the Security-Mutual Bank & Trust Company instituted this proceeding in interpleader, joining as defendants G. A. Buder, Jr., as executor of his father's estate, Oscar E. Buder as executor of Sophie's estate and G. Joseph Neaf, administrator of the G. A. Franz estate. It is not necessary to detail the factual allegations in the bank's petition, they consist in

part of the facts as they have been detailed in the introductory paragraphs. It is sufficient to say that the pleading was a conventional petition in interpleader in which the bank, in addition to the usual requests, asked that G. A. Buder, Jr., be enjoined from negotiating the $97,500.02 check and that the court determine the validity and effect of the probate court order of distribution of December 26, 1953. The defendant Oscar Buder, executor of Sophie's estate, filed an answer and counterclaim in which he prayed for a judgment against the bank in the sum of $97,500.02. G. A. Buder, Jr., filed a motion to dismiss the interpleader proceeding, and again it is not necessary to detail the allegations of his motion other than to say that upon the facts therein set forth it was his position that interpleader was not an available remedy and that the circuit court lacked jurisdiction to entertain the proceeding.

There was a hearing upon the petition for interpleader and the motion to dismiss and, substantially, the evidence was as detailed at the outset of this opinion. By consent of all the parties Neaf, administrator of the G. A. Franz estate, was dismissed as a party defendant. In its order and decree sustaining the interpleader, the trial court detailed some of the facts, the 1953 order of distribution, the issuance of the order, the bank's attempt to release the assets of Sophie's estate, G. A. Buder, Jr's., pending suit against the bank and Oscar's claim. The court ordered the bank to pay the $97,500.02 into the registry of the court, less $6,700 attorneys' fees to its counsel, and discharged the bank from all obligations with respect to the fund. G. A. Buder, Jr., was ordered to interplead his claim to the deposited fund, he was enjoined from negotiating the check and, · in addition, the court enjoined him "from instituting or prosecuting any proceeding against Security-Mutual Bank & Trust Company with respect to the money delivered over to the Registry of Court."

■ G. A. Buder, Jr., has appealed from the court's order and decree and in the circumstances it is not necessary to say whether as to the interpleader alone the appeal concerns an "amount in dispute" (Const.Mo., Art. 5, Sec. 3, V.A.M.S.) in excess of $15,000 (Laws Mo.1959, Senate Bill No. 7), the trial court also enjoined the negotiation of the check, the prosecution of G. A. Buder, Jr's., $197,500.02 damage suit and, for the time being, his immediate claim under the 1953 order of distribution, therefore the injunction phase of the judgment and appeal involves a sum of money within this court's monetary jurisdiction. Missouri, Kansas & Eastern Ry. Co. v. Watson, 64 Mo.App. 465; Jesser v. Mayfair Hotel, Mo., 316 S.W.2d 465.

In support of his appeal G. A. Buder, Jr., makes six principal points, three of which concern the jurisdiction of the circuit court to entertain the proceeding. Briefly the essence of the jurisdictional point is that the circuit court lacked jurisdiction of the particular proceeding because the probate court has exclusive jurisdiction of the distribution of estates and a proceeding involving the same subject had been instituted and conclusively adjudicated by the probate court in 1953 if not by this court in Buder v. Walsh, supra. The problems raised by these particular arguments all relate to and may be determinative of the controversy between G. A. Buder, Jr., and Oscar Buder and it would not be possible to even discuss them in passing without indicating some opinion as to their essential merits. It is sufficient to say that the problems are not free from doubt and since the proceeding has not been heard or considered on its merits these three attacks on the court's jurisdiction are not open questions upon this appeal. Little v. St. Louis Union Trust Co., 197 Mo. 281, 295, 94 S.W. 890, 893. Oscar contends, of course, that the estate of Sophie Franz had not been fully administered, that the probate court order of 1953 was not a final judgment in favor of the appellant, that he, Oscar, has title to the fund and that his claim to the $97,500.02 is as an asset of the Sophie Franz estate. These respective claims and the fact that G. A. Buder,

Jr., has a suit pending against the bank (and there are threats of others) involving these identical funds is some indication that the bank may be exposed to the hazard of multiple liability. Novinger Bank v. St. Louis Union Trust Co., 196 Mo.App. 335, 340–341, 189 S.W. 826, 828.

As to the bank's right to institute the interpleader proceeding and the propriety of the court's entertaining and sustaining the right the appellant makes three principal claims. First, that the bank was a mere bailee, owed an independent liability to the appellant and, therefore, could not occupy a position of complete disinterestedness and impartiality. Second, because the bank issued its check and then sought and obtained an order enjoining its negotiation as well as an order preventing the appellant's enforcement of the probate court's decree, it is said that the bank does not occupy a position of disinterestedness and may not maintain interpleader. And, finally, it is urged that the court should have dismissed the interpleader petition because "the adverse claims of the defendants were not for the same debt or duty and were not derived from a common source."

 In support of his claims the appellant cites a series of Missouri cases decided prior to the adoption of the Civil Code of Procedure in 1943 and the enactment of a general statute governing interpleader, V.A.M.S., Sec. 507.060; Laws Mo.1943, p. 353. He also cites a series of cases from other jurisdictions which do not have statutes similar to section 507.060, cases which quote the classical prerequisites of interpleader as set forth in 4 Pomeroy, Equity Jurisprudence, Sec. 1322, p. 906, a text that has not been revised since 1941. It is not believed, in view of their experience, that the Buder family can be so unfamiliar with the modern rules of interpleader and the changes wrought by the enactment of the statute, section 507.060. See Star-Times Publishing Co. v. Buder, Mo., 245 S.W.2d 59 and "Interpleader in Missouri," Eugene H. Buder, 7 Mo.L.R. 203 (1942) which antici-

pated the force and effect of the enactment of the interpleader statute. The appellant's present argument ignores the fact that the statute, section 507.060, has entirely abolished certain technical requirements and broadened the scope of interpleader. 23 Mo.L.R. 339; St. Louis Southwestern Ry. Co. v. Meyer, 364 Mo. 1057, 1071, 272 S.W.2d 249, 256, 46 A.L.R.2d 964; Barr v. Snyder, 358 Mo. 1189, 219 S.W.2d 305. The broadened force of the statute was recently spelled out by the court en banc in Plaza Express Co., Inc. v. Galloway, 365 Mo. 166, 171, 280 S.W.2d 17, 20, 21: "As we read the plain language of this statute, *there are only two vital facts which must appear* from the averments in plaintiffs' statement of their claim. *These are that persons have claims against plaintiffs, and that those claims are of such nature that plaintiffs may be exposed to 'double liability.'* Obviously, 'double liability' means 'exposed to double recovery for a single liability.' The other pertinent parts of the statute eliminate the necessity for the existence of facts and conditions, the existence of which was formerly necessary to the maintenance of equitable interpleader or of bills in the nature of interpleader. *Thus is eliminated the necessity that the same thing, debt, or duty be claimed by each of the parties against whom relief is sought.* This, because the section provides that the claims need not be identical. So, also, *it is not necessary that the claims of the parties be dependent or derived from a common source* because the section specifically provides that the claims may be independent of one another and that they need not have a common origin. *And it is not necessary that a plaintiff,* in order to use the machinery of the section, *have no claim or interest in the subject matter or that he stand perfectly indifferently between the claimants in the position of a stakeholder.* This, because the section provides that one seeking relief may deny liability to any or all of the claimants." (Italics supplied for emphasis.) The quotation is a seriatim answer to every claim made by the appellant. Aside from the merits of the adverse claims of G. A.

Buder and Oscar Buder and those they represent, if anyone else, the two vital facts prerequisite to modern interpleader are indeed present here. There is G. A. Buder's pending suit against the bank, as well as his claim in this proceeding if he asserts it, and there are Oscar's thinly veiled threats of further suits and, all in all, the bank "is or may be exposed to double or multiple liability." V.A.M.S., Section 507.060. Accordingly the judgment is affirmed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.