Eugene H. **BUDER**, Executor of the Estate of Oscar E. Buder, Deceased, and Eugenia H. Buder, Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 17940.

United States Court of Appeals Eighth Circuit.

Jan. 4, 1966.

Rehearing Denied Jan. 25, 1966.

Eugene H. Buder, St. Louis, Mo., pro se.

Robert H. Solomon, Atty., Tax Division, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Tax Division, Dept. of Justice, Washington, D. C., and Richard D. Fitz-Gibbon, Jr., U. S. Atty., and John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

Our question here is whether a $25,000 legal fee qualified as income in the calenlar year 1953 rather than in a subsequent tax year. The district court decided the issue in favor of the government, that is, it held the fee to be 1953 income. Buder v. United States, 235 F.Supp. 479 (E.D. Mo.1964).

Oscar E. Buder and his wife are the taxpayer-appellants. They filed a cash basis joint income tax return for 1953. Mr. Buder died in February 1965; his representative has been substituted in his place.

Oscar and his brother, G. A. Buder, were lawyers and partners in the practice of law in Saint Louis from 1908 through 1945. A dispute arose and culminated in litigation between them and in the termination of their partnership.[1] The partnership's affairs, we are told, are still in liquidation.

The taxpayers filed two separate and different claims for refund of 1953 tax. The present action covers the subject matter of both. The first claim related to the disallowance, as deductions, of expenses incurred and paid in 1953 in Oscar's litigation with his brother. At the trial it was stipulated that two-thirds of these 1953 expenses were deductible. Presumably this followed the result reached in another lawsuit concerning Oscar's 1955 and 1956 expenses in the same litigation. Buder v. United States, 221 F.Supp. 425 (E.D.Mo.1963). In any event, because of the stipulation, judgment was entered by the district court in favor of the taxpayers. No appeal, of course, is taken with respect to this expense issue.

The second claim related to a fee which the Buder law partnership charged the Estate of Sophie Franz, deceased. A Saint Louis circuit court judgment for this fee in the amount of $52,686.87 was entered in July 1953 in favor of the Buders and against the Franz estate. Later the amount of this judgment was adjusted downward to $50,000. Oscar's $25,000 share of this fee is the subject of the present appeal.[2]

Mrs. Franz, a Saint Louis resident, died testate in 1930. She left a substantial estate which has been the subject of extended litigation in the Missouri state courts and in the federal courts.[3]

The parties further stipulated that, in determining the fee issue, the court "may accept and be guided by the findings of fact and conclusions of state law made by the Supreme Court of Missouri in In re Franz' Estate, reported at 372 S.W.2d 885" (1963). That reported and lengthy opinion, therefore, is of pivotal importance here and provides additional facts:

G. A. Buder was appointed executor of Mrs. Franz' will by the probate court of the City of Saint Louis. As executor he filed 26 annual settlements of the estate covering the period from its inception to and including July 23, 1953. On October 6, 1953, he filed his final settlement, together with a memorandum for an order of distribution, and, later, a supplemental memorandum, dated December 16, 1953. In the final settlement the executor set off the Buder judgment against a larger debt owed the estate. After published notice, the probate court on December 26, 1953, issued its "Order of Distribution". This recited that the executor was tendering his final settlement and memoranda "for distribution of the purported balance remaining in his hands" and that, upon his application, "the court orders that said executor pay, assign and deliver the above described property in the manner following * * *."[4] The

1. See, as to this, State ex rel. Pontiac Realty Co. v. Nangle, 315 S.W.2d 214 (Mo.Sup.1958); Buder v. United States, 221 F.Supp. 425 (E.D.Mo.1963); Buder v. Commissioner, 330 F.2d 441 (8 Cir. 1964), affirming T.C. Memo 1963-73, 22 T.C.M. 300.

2. G. A. Buder's share was at issue in the Tax Court decision at 22 T.C.M. 300 but was not a subject of our review reported at 330 F.2d 441, supra.

3. See, for example, In re Franz' Estate, 344 Mo. 510, 127 S.W.2d 401 (1939),

and the cases cited at p. 403; In re Franz' Estate, 346 Mo. 1149, 145 S.W. 2d 400 (1940); Buder v. Walsh, 314 S.W.2d 739 (Mo.Sup.1958), and cases cited in footnote 1, p. 740; Security-Mutual Bank & Trust Co. v. Buder, 341 S.W.2d 782 (Mo.Sup.1960).

4. V.A.M.S. § 465.170 then provided that the probate court "shall find and determine who are the persons entitled to distribution and their respective interests in said estate, and order the executor or administrator to distribute the property

executor made the distribution so ordered except for a one-ninth interest which became the subject of other litigation. No exceptions were filed and no appeal was taken from this order; the time to appeal expired.

G. A. Buder died in April 1954. Oscar succeeded him as representative of the Franz estate by appointment as executor d. b. n. Oscar promptly filed a motion in the probate court to require the G. A. Buder estate to account for assets. This eventually culminated in a probate court order, dated October 23, 1958, approving G. A. Buder's final settlement of October 6, 1953, subject, however, to a surcharge imposed on the court's own motion. Oscar, as executor d. b. n., appealed to the circuit court. The one-ninth share was distributed in 1958.

Three other appeals were also taken to the circuit court. One was by Oscar, as executor d. b. n., from the probate court order dismissing, for want of jurisdiction, new exceptions he had filed to the executor's final settlement. Another, also by Oscar, but in his personal capacity and as a judgment creditor of the Franz estate, was from the probate court order holding that the Buders' judgment against the estate had been paid and satisfied. The last was by the representative of the G. A. Buder estate with respect to the surcharge.

All four appeals were consolidated for trial in the circuit court. Trial de novo, as provided by V.A.M.S., § 472.250, ensued in 1960. The circuit court decided each of Oscar's three appeals adversely to him. It decided the G. A. Buder appeal in that estate's favor by denying the surcharge. The circuit court, as had the probate court, specifically found that the Buders' judgment against the Franz estate "had been paid and satisfied" and that this had been effected "by a set-off against amounts due to the Executor of the Estate of Sophie Franz from Buder & Buder". The circuit court judgment was entered January 12, 1962.

Only Oscar, in his representative capacity, appealed from that judgment to the Supreme Court of Missouri. This is the appeal with which the report at 372 S.W.2d 885, supra, is concerned.

The Supreme Court, among other things, held, p. 898, that, because Oscar in his personal capacity had taken no appeal to it, the circuit court judgment against him "to the effect that the [Buders'] claim had been paid and discharged became final and is res adjudicata". It also held that Oscar could not challenge the conclusion as to payment in his representative capacity because, as representative, he was not prejudiced by the circuit court's judgment. Thus the payment and satisfaction of the Buder & Buder fee against the Franz estate and the effectuation of that payment by setoff are both matters definitively and finally settled by the Missouri state court proceedings and are not now to be challenged here. The taxpayers do not claim otherwise.

Oscar's share of the fee was income to him sometime. The issue is as to when, that is, as to when, for federal income tax purposes, the setoff and the payment of the Buders' judgment were effected. Was it, as the government asserts, in 1953 when the executor formulated the setoff in his accounting to the probate court and when that court issued its order of distribution from which no appeal was taken? Or was it, as the taxpayers claim, in some later year, particularly 1958, when the probate court formally approved the settlement, or 1962, when the circuit court entered its judgment, or 1963, when the Supreme Court's opinion was issued and finally modified?

Chief Judge Harper ruled, p. 481 of 235 F.Supp.:

"The set-off occurred as an accounting entry in the final settlement and was effective at the time of the probate court's order of distribution on December 26, 1953, thus

remaining in said estate according to such finding, which said finding and judgment shall be conclusive on all persons claim-

ing thereunder, subject to the right of appeal as provided by law."

leaving plaintiff Oscar Buder's share of the $50,000.00 partnership fee earned as of that time. Subsequent appeals did not change this date from being the time payment was effective. * * *

"It has been clearly established by the Missouri Supreme Court that the Buder partnership got complete satisfaction of its claim by means of the set-off, and this satisfaction was income to the partners, though not received in hand as such, and the satisfaction was received in the year 1953 when the probate court ordered final distribution, notwithstanding the subsequent appeals."

The controlling statute is § 42 of the Internal Revenue Code of 1939, as amended. This merely provides generally that, with stated exceptions not applicable here, "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer * * *." Section 182 provides that a partner shall include, whether or not distribution is made to him, his distributive share of the ordinary net income of the partnership.

■ Missouri law, of course, controls any underlying question of estate and probate practice; the federal statutes then determine the federal income tax effect thereof. Blair v. Commissioner, 300 U.S. 5, 9–10, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Estate of Peyton v. Commissioner, 323 F.2d 438, 442 (8 Cir. 1963); Helvering v. Rhodes' Estate, 117 F.2d 509 (8 Cir. 1941); Eisenmenger v. Commissioner, 145 F.2d 103 (8 Cir. 1944).

■ In a distinct sense, tax law is an area unto itself. It is, of course, basically statutory. It "is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid". Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74

L.Ed. 916 (1930); Burnet v. Wells, 289 U.S. 670, 678–679, 53 S.Ct. 761, 77 L.Ed. 1439 (1933). It is pragmatically applied. Industrial Aggregate Co. v. United States, 284 F.2d 639, 645, 3 L.Ed.2d 1360 (8 Cir. 1960). Its incidence "depends upon the substance, not the form, of the transaction". Commissioner v. Hansen, 360 U.S. 446, 461, 79 S.Ct. 1270, 1279 (1959); Haag v. Commissioner, 334 F.2d 351, 355 (8 Cir. 1964). "Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him". Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 146, 85 L.Ed. 75 (1940); Acer Realty Co. v. Commissioner, 132 F.2d 512, 516 (8 Cir. 1942). And we are reminded that § 22(a) of the Code, with its definition of gross income has been characterized by the Supreme Court:

"The broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power within those definable categories. * * * Hence our construction of the statute should be consonant with that purpose. Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue." Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940).

"The very essence of taxable income, as that concept is used in Section 22 (a), is the accrual of some gain, profit or benefit to the taxpayer." Commissioner v. Wilcox, 327 U.S. 404, 407, 66 S.Ct. 546, 548, 90 L.Ed. 752, 166 A.L.. 884 (1946).[5]

Finally, in these cases, the taxpayers have the burden of proof. Haberman Farms, Inc. v. United States, 305 F.2d 787, 790 (8 Cir. 1962).

5. Commissioner v. Wilcox was overruled by James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), but the force of this quotation was not thereby affected.

With this approach we do not see how the district court could have reached any other conclusion than it did, namely, that the Buder & Buder fee was paid in 1953 and qualified as income to the beneficiaries of the liquidating partnership, including Oscar, in that year and not later. The fee was set off in that year. The setoff was incorporated in a formal and final settlement compiled in that year. The settlement was filed with the controlling probate court in that year. The required notice to interested persons was given in that year. The executor made application for distribution in that year. And in that year the probate court's order of distribution was issued, describing the estate's assets as they were constituted after the setoff. All this was in Oscar's taxable year 1953.

Of course, there were post-1953 aspects of the Franz probate. The opinion of the Missouri Supreme Court is replete with references to the effect that G. A. Buder's settlement, although "final" and filed on October 6, 1953, was formally approved by the probate court only on October 23, 1958, and by the circuit court only on January 12, 1962. At p. 901 of 372 S.W.2d, the Court referred to the final settlement "which had remained on file in the probate court unapproved for more than five years after it had been filed and distribution made". It went on to say:

"We agree that 'The filing of an account cannot, of itself, constitute a settlement. A settlement is the act and judgment of the court, of which there must be some record.' Morehouse v. Ware, 78 Mo. 100, 103. * * * "

There are, however, events of opposing significance in the probate chronology. It is clear, first, that G. A. Buder, as executor, in 1953 had placed before the probate court the complete accounting of his administration of the Franz estate and, in fact, had set off the Buder & Buder fee in that accounting. It is clear, second, that if that setoff was effective, it operated to eliminate the estate's fee obligation to the Buders or, in other words, to effect payment of the fee. It is clear, third, that the Missouri Supreme Court regarded the setoff as effecting payment for it said, pp. 888 and 895 of 372 S.W.2d, that the judgment had "been paid and satisfied". And it is clear, fourth, that something more than the mere filing of the executor's final settlement took place in 1953. The probate court actually ordered distribution of the estate with a description of the estate's remaining assets according to the settlement and accompanying memoranda. That order therefore necessarily accepted the settlement, although subject to possible appeals, and recognized the fact of setoff; it had meaning, significance and effect by its description of the estate's remaining assets, "net", so to speak, after the setoff. This was the effective "last step" by which the Buders obtained "fruition" of their fee, within the language of Helvering v. Horst, quoted above, and the "gain, profit or benefit", within the language of Commissioner v. Wilcox, also quoted above. All parties, the taxpayer Oscar alone excepted, accepted the situation. As the Missouri Court said, p. 901 of 372 S.W.2d:

"Further, during the period between October 6, 1953 and October 23, 1958, it does not appear that any person, other than Oscar E. Buder, appeared claiming any interest whatever in said estate * * *. The record further fails to show that any other person claiming as an heir, legatee, devisee, or in any other manner had complained of the said final settlement * * *. On the other hand, the evidence tends to show that all other interested parties had, in fact, approved the settlement and filed distributive receipts for their respective shares in the Estate of Sophie Franz, deceased."

And, on p. 909, it was stated:

"From a careful review of allegations of the 'motion to account', as filed by appellant in the probate court on May 27, 1954, no issue was presented as to *the validity of the*

*order of distribution of December 26, 1953."*

What we are saying is that, despite the fact there may have been no formal probate court order in 1953 specifically approving the settlement, an acceptance of the setoff was necessarily inherent in the fact of the entry of the order of distribution. It was no less present in 1953 because later, in 1958, the probate court issued a formal order of specific approval. The order of distribution was the court's action giving effect and recognition to the settlement and to the setoff which it embraced. Thus, this result is not inconsistent, as the taxpayers would suggest, with Massey v. Commissioner, 143 F.2d 429 (5 Cir. 1944). We have court action of sufficient significance to satisfy the demands of income tax law.

All this is the essence of the "claim of right" approach of cases such as North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197 (1932); United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951); and Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953), despite a possibility of required restoration in the future. See, also, Rutkin v. United States, 343 U.S. 130, 137, 72 S.Ct. 571, 96 L.Ed. 833 (1952); James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), and our own recent decision as to the taxability of embezzled funds, Estate of Geiger v. Commissioner, 352 F.2d 221 (8 Cir. 1965).

One factual aspect perhaps deserves additional mention. Except for the executor's surcharge appeal, Oscar himself was the only one who challenged the probate court's conclusions. He was the one, therefore, whose actions resulted in prolongation of the Franz proceedings for the decade after 1953. Were we to give tax effect to his appeals we would, in a way, be enabling him to select the year in which his share of the fee is to be taxed. While, in the practicalities of income tax law, there is always some element of tax-year selection, we feel that this facet of Oscar's case is not to operate to his benefit.

Although we place no real reliance on it, because of possible consent and commitment there, we note that our result is in accord with that reached by the Tax Court with respect to G. A. Buder's share of the Buder & Buder fee. Estate of G. A. Buder, T.C. Memo 1963–73, 22 T.C.M. 300.

We agree with the district court that Oscar's share of the fee was taxable to him in 1953.

Affirmed.